```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIANNA MURPHY, et al.         :    CIVIL ACTION
                               :    NO. 20-2230
         v.                    :
                               :
JOHN DOE POLICE DETECTIVE #1,  :
et al.                         :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          SEPTEMBER 27, 2021

## I.  INTRODUCTION

This is a 42 U.S.C. § 1983 action in which the remaining Plaintiff, Brianna Murphy, asserts in her third amended complaint claims for due process violations under: (1) a "stigma plus" defamation theory against Defendant Lisa King (Count I); (2) a state-created danger theory against Defendants King and Sabrina McCoy (Counts II and III); (3) a failure to train and supervise theory against Defendant King (Count IV); and (4) an unconstitutional custom theory against Defendant King (Count V).[1]

The Defendants now move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the

---

[1] The Plaintiff has sued Defendant King in her personal and official capacities. The Plaintiff's claims against Defendant King in her official capacity are "another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978). In other words, a claim against a defendant in her official capacity is a claim against the municipality.

forthcoming reasons, the Court will grant the Defendants' motion to dismiss the defamation claim in Count I, the state-created danger claims in Counts II and III, the failure to train claims in Count IV, and the unconstitutional custom claim against King in her personal capacity in Count V. The Court will deny the Defendant's motion to dismiss the unconstitutional custom claim against King in her official capacity in Count V.

## II. BACKGROUND

Plaintiff alleges that Defendant King is the supervisor of the Philadelphia Police Department's ("PPD") Gun Permit Unit ("GPU") and that Defendant McCoy is the Revocations Officer for the GPU who is responsible for sending out revocation notices.

The Plaintiff was granted a license to carry a concealed firearm ("LTC") in 2018. On October 8, 2018, the Plaintiff shot her neighbor in self-defense. The Plaintiff was arrested for aggravated assault and her LTC and firearm were confiscated. Ultimately, the Plaintiff was not charged with a crime and her LTC and firearm were returned to her.

However, on October 9, 2018, and unknown to the Plaintiff, the PPD GPU revoked the Plaintiff's LTC. The revocation letter indicated the Plaintiff's LTC was revoked following the Plaintiff's arrest for "Careless and Negligent Behavior" and "Character and Reputation." Pl.'s Third Am. Compl. Ex. C, ECF No. 34. On October 10, 2018, Defendant McCoy attempted to notify

2

the Plaintiff, via certified mail, that her LTC was revoked. However, the Plaintiff did not receive the notice because she had vacated her residence where the notice was sent. The notice was then returned to sender as undeliverable. Thereafter, no GPU official attempted to notify the Plaintiff by resending the letter or by any other means.

On January 16, 2020, the Plaintiff and her husband were pulled over for a traffic violation in Radnor Township, Pennsylvania. The Plaintiff informed the officer that she had a firearm with her. The officer found that the Plaintiff's LTC had been revoked and arrested the Plaintiff for carrying a firearm without an LTC. The Plaintiff was detained for several hours prior to being released on unsecured bond.

Before the preliminary hearing on the firearm charge, Defendant McCoy told the Delaware County Prosecutor that the Plaintiff was not informed that her LTC was revoked prior to her arrest. The Plaintiff's firearm was thereafter returned, and the charges withdrawn. The GPU ultimately granted the Plaintiff a nunc pro tunc appeal of her LTC revocation. Following the hearing on March 9, 2021, the Plaintiff's LTC was reinstated.

The Plaintiff contends that as a direct result of the Defendants' conduct, she now suffers from severe emotional distress, posttraumatic stress disorder ("PTSD"), and severe depression. The Plaintiff brought suit in this Court on May 11,

2020, invoking Federal Question jurisdiction. This Court granted the Plaintiff's motion to amend her second amended complaint on February 24, 2021. The Defendants have now moved to dismiss the third amended complaint.

### III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## IV. DISCUSSION

### A. Count I: Due Process–Defamation: Stigma Plus

The Plaintiff asserts a due process "stigma-plus" defamation claim against Defendant King in her personal and official capacities. The Plaintiff asserts King violated the Fourteenth Amendment by causing the Plaintiff's name to be "stigmatized" without "providing her the opportunity to have a name-clearing hearing." Pl.'s Third Am. Compl. ¶ 59, ECF No. 34. Specifically, the Plaintiff claims that the notations in the revocation letter, which were also allegedly listed in the PPD database, that the Plaintiff engaged in "Careless and Negligent Behavior" and had a presumably bad "Character and Reputation" were false and defamatory. Id. Ex. C.

A due process "stigma-plus" claim requires the plaintiff to establish "a stigma to his reputation plus deprivation of some additional right or interest." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006). To establish stigma to reputation, the plaintiff must allege the statements "(1) were made publicly, and (2) were false." Id. (citations omitted). To establish the "plus" element, the plaintiff must show "an alteration or extinguishment of 'a right or status previously

recognized by state law.'" Id. at 237 (quoting Paul v. Davis, 424 U.S. 693, 712 (1976)). "When such a deprivation occurs, the employee is entitled to a name-clearing hearing." Id. at 236.

The Plaintiff asserts the LTC revocation letter contained false statements because the PPD's investigation concluded that she committed no criminal act, and the statements were made publicly via the PPD's computer database. Additionally, the Plaintiff argues the "plus" element is satisfied because she was deprived of her LTC, an alteration of her legal status.

The Plaintiff has not pleaded adequate facts to support the "stigma-plus" claim. The Plaintiff has not alleged any facts which suggest that the revocation letter was shared beyond the PPD's computer database. Moreover, beyond general speculation, she has also failed to plead that the database is available to the public. Indeed, the only evidence available indicates that the LTC application database is limited to law enforcement officers and is not available to the public. Further, the Plaintiff's LTC has since been returned after a hearing that, in fact, cleared her name.

Given that the Plaintiff has had four opportunities to adequately plead Count I, the Court has rejected her only allegation of publication, and she has received her name clearing hearing, the Court will dismiss Count 1 with prejudice.

6

B.   **Count II & III: Due Process State-Created Danger**

The Plaintiff asserts state-created danger claims against Defendant McCoy in her personal capacity (Count II) and Defendant King in her personal and official capacities (Count III).

The "Third Circuit adopted the '"state-created danger" exception to the general rule that the Due Process Clause imposes no duty on states to protect their citizens from private harm.'" Luu v. Esterly, 367 F. Supp.3d 335, 343 (E.D. Pa. 2019) (quoting L.R. v. Sch. Dist. of Philadelphia, 836 F.3d 235, 242 (3d Cir. 2016)).

To establish a state-created danger claim, a plaintiff must plead four elements:

> "(1) 'the harm ultimately caused was foreseeable and fairly direct;' (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that 'the plaintiff was a foreseeable victim of the defendant's acts,' or 'a member of a discrete class of persons subjected to the potential harm brought about by the state's actions,' as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (citations and footnotes omitted).

To begin, there is doubt whether the state-created danger doctrine is applicable in this case, given that the Plaintiff

7

did not suffer physical injuries.[2] However, the Court need not address this question because the Plaintiff has not satisfied the second and fourth element of the claim.

Under the second element of the state-created danger test, the degree of "conscience shocking" behavior depends on the circumstances of the case. If the state actor has time to deliberate, as is the situation here, then the plaintiff must demonstrate deliberate indifference. See Mann v. Palmerton Area Sch. Dist., 872 F. 3d 165, 171 (3d Cir. 2017). Deliberate indifference "requir[es] a conscious disregard of a substantial risk of serious harm." Luu, 367 F. Supp. 3d at 345 (citing Sch. Dist. Of Phila., 783 F.3d at 973). The Plaintiff has not alleged facts to demonstrate that the Defendants were deliberately indifferent in that she has not pleaded facts to support that: (1) the Defendants were aware of substantial risks of not following up on undelivered revocation letters; and (2) disregarded those risks. Indeed, the Plaintiff does not even allege that Defendants McCoy or King were aware that the

---

[2] The state-created danger doctrine typically applies in cases involving death and serious injuries, and courts have not generally recognized state-created danger claims where injuries are less severe. See Bailey v. City of Allentown, No. 11-2600, 2013 WL 4079657, at *3 (E.D. Pa. Aug. 13, 2013); Miller v. Jack Webber, No. 96-5832, 1997 WL 698043, at *1 (E.D. Pa. Nov. 4, 1997)(citing cases). The Plaintiff has not offered any cases in which a state-created danger theory has been successfully applied to the type of injuries alleged here.

revocation letter was returned. Therefore, the Plaintiff has not established that the Defendants acted in a manner that shocked the conscience.

Additionally, the Plaintiff has not satisfied the fourth element of the state-created danger test, that the Defendants acted affirmatively. The Third Circuit has held "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Bright, 443 F.3d at 282. "[T]he Third Circuit Court of Appeals has routinely held that an alleged failure to enforce [a defendant's] own policies is not equivalent to an affirmative act." Luu, 367 F. Supp. 3d at 345 (first citing Gayemen v. Sch. Dist. of City of Allentown, 712 F. App'x 218, 221 (3d Cir. 2017) ("The School District's failure to remove students from the school simply does not constitute an affirmative act, even if school policy required their removal.") and then citing Morrow v. Balaski, 719 F.3d 160, 178 (3d Cir. 2013) ("[W]e decline to hold that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act under the circumstances here.")). Here, like a failure to enforce a policy, the failure to resend the revocation notice is not affirmative action.

Thus, the Court will grant the Defendant's motion to dismiss Counts II & III with prejudice because, after four attempts, the Plaintiff cannot state a facially plausible claim

9

for relief since, inter alia, the claims are premised on the Defendants' failure to act.

### C. Count IV & V: Due Process Violations for Failure to Train and Supervise; and Enforcement of an Unconstitutional Custom

The Plaintiff asserts claims against Defendant King in her personal and official capacities for failure to train and supervise (Count IV) and enforcement of an unconstitutional custom violating Jones v. Flowers (Count V). Plaintiff's claims against Defendant King in her official capacity in Count IV and V are rooted in supervisory liability and will be considered together under Monell, 436 U.S. 658. The claims against Defendant King in her personal capacity will be discussed separately.

#### 1. Underlying Constitutional Violation

To state a claim for deprivation of due process, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill, 455 F.3d at 233–34 (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). The Parties dispute whether an LTC is a protected property interest under the Fourteenth Amendment.

Property interests are created "from an independent source such as state law." Bd. of Regents of State Coll.'s v. Roth, 408 U.S. 564, 577 (1972). Courts must look to the state law creating the interest when evaluating whether a state benefit rises to the level of a protected property interest. Larsen v. Senate of Com. of Pa., 154 F.3d 82, 92 (3d Cir. 1998) (citing Roth, 408 U.S. at 569, 577).

Section 6109 of the Uniform Firearms Act details the issuance and revocations of LTC permits in Pennsylvania. 18 Pa. C.S.A. § 6109 (2011). In Caba v. Weaknecht, 64 A.3d 39 (Pa. Commw. Ct. 2013), the state court found that the 1998 Amendments to the Uniform Firearms Act "strongly evidences clear legislative intent to both guide and limit the discretion of the licensing authority with respect to the grant, denial, and revocation of licenses," and, thus, created a protectable property interest in an LTC. Caba, 64 A.3d at 62.

Prior to the amendment, Section 6109 provided only that, "[a]ny such license to carry firearms may be revoked by the person issuing the same." 18 Pa. C.S.A. § 6109 (1998) (emphasis added). The 1998 Amendments added after this sentence that "[a] license to carry firearms shall be revoked by the issuing authority for any reason stated in subsection (e)(1). . . ." 18 Pa. C.S.A. § 6109 (1999) (emphasis added). The 1998 amendments also provided for a right to appeal a revocation. Id. The Caba

11

court concluded that since the licensing authority's discretion was fettered after the 1998 amendments, and a licensee could now appeal a revocation, Caba had a legitimate constitutional claim to his license. Id. at 62-63. Prior to Caba, another court in this district concluded that Section 6109 allowed sufficient discretion in granting and revoking LTC's that there was no protectable property interest in an LTC. Potts v. City of Phila., 224 F. Supp.2d 919, 941 (E.D. Pa 2002). However, as noted in Caba, the district court in Potts relied on pre-1998 cases in noting that "Pennsylvania courts have expressly ruled that § 6109 . . . grants far-reaching discretion to licensing bodies in issuing and revoking gun permits." Id. at 942; see Caba, 64 A.3d at 60-63.

This Court agrees with the reasoning in Caba and concludes that the Plaintiff has a protected property interest in the LTC.

### 2.   Claim against King in her official capacity

The Plaintiff asserts Counts IV and V against Defendant King in her official capacity. These claims must be treated as against the municipal entity. Monell, 436 U.S. at 690, n. 55; see note 1, supra. Count IV of the third amended complaint alleges a failure to train while Count V alleges an unconstitutional custom. The Court will first discuss the unconstitutional custom claim in Count V and will then move to the failure to train claim in Count IV.

### a. Unconstitutional Custom Claim

Municipalities are liable under Section 1983 when an official municipal policy or an informal custom causes a constitutional tort. Ekwunife v. City of Phila., 245 F. Supp.3d 660, 673-74 (E.D. Pa. 2017) (Robreno, J.) (citing Monell, 436 U.S. at 690). A custom is established by "practices by state officials that amount to entrenched behavior in the municipal employees." Id. at 674.

To state a claim under Monell, "a plaintiff must establish that (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom." Id. To appropriately plead a Monell claim, the Plaintiff must identify a policy or custom and then "plead facts demonstrating a 'direct causal link between [the] policy or custom and the alleged constitutional deprivation.'" Id. at 675 (quoting Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007)).

The Plaintiff asserts that Defendant King enforced an unconstitutional custom because the GPU failed to provide proper notice to LTC holders whose revocation letters were returned as undelivered based on the Supreme Court's decision in Jones v. Flowers, 547 U.S. 220 (2006). The Defendants do not challenge

13

the general averment that there is no process for contacting license holders when a revocation letter is returned as undeliverable.

In Flowers, the Supreme Court concluded that after a certified letter was returned to the government apprising Jones of an impending tax sale of his property, due process required the government to take "additional reasonable steps to notify Jones, if practicable . . . ," such as resending the letter by regular mail. 547 U.S. at 234. The Court continued that even a state statute requiring citizens to update their mailing address does not "relieve[] the State of its constitutional obligation to provide adequate notice." Id. at 232.

Here, the Plaintiff has pleaded that the GPU had her telephone number on file and could have contacted her. Considering the allegations in the light most favorable to the Plaintiff, calling the Plaintiff arguably would have been an "additional reasonable step" to notify her after the revocation letter was returned as undeliverable. As per Flowers, the GPU could have also simply resent the letter by regular mail. Id. at 234. Based on the holding in Flowers, and given that Plaintiff has a property interest in her LTC under Pennsylvania law, she has satisfied the first requirement of the Monell test and has adequately alleged that the GPU's failure to follow-up on the

14

returned LTC revocation letter deprived the Plaintiff of her procedural due process rights.

The second requirement of the Monell test is for the Plaintiff to establish that the municipality "acted deliberately and was the moving force behind the deprivation." Ekwunife, 245 F. Supp.3d at 674 (citing Monell, 436 U.S. at 692-94). Here, the GPU's failure to follow up on the undelivered revocation letter directly led to the alleged deprivation of property which the Plaintiff contends violated her due process rights. Therefore, the Plaintiff has satisfied the second requirement of the Monell test.

The third requirement of the Monell test is that the "plaintiff's injuries were caused by the identified policy or custom." Id. (citing Monell, 436 U.S. at 692-94). Here, the Plaintiff claims that as a result of the GPU's failure to notify her of her LTC revocation, she suffers from PTSD and severe depression. Considering the allegations in the light most favorable to the Plaintiff, she has adequately pleaded that the described events could have caused her injuries. The Plaintiff also alleges that she is "absolutely terrified to leave her home because, without her LTC . . . she has no adequate means of self-defense." Third Am. Compl. ¶ 56, ECF No. 34. This allegation of injury is less reasonable because the Plaintiff's LTC permit has been returned.


returned LTC revocation letter deprived the Plaintiff of her procedural due process rights.

The second requirement of the Monell test is for the Plaintiff to establish that the municipality "acted deliberately and was the moving force behind the deprivation." Ekwunife, 245 F. Supp.3d at 674 (citing Monell, 436 U.S. at 692-94). Here, the GPU's failure to follow up on the undelivered revocation letter directly led to the alleged deprivation of property which the Plaintiff contends violated her due process rights. Therefore, the Plaintiff has satisfied the second requirement of the Monell test.

The third requirement of the Monell test is that the "plaintiff's injuries were caused by the identified policy or custom." Id. (citing Monell, 436 U.S. at 692-94). Here, the Plaintiff claims that as a result of the GPU's failure to notify her of her LTC revocation, she suffers from PTSD and severe depression. Considering the allegations in the light most favorable to the Plaintiff, she has adequately pleaded that the described events could have caused her injuries. The Plaintiff also alleges that she is "absolutely terrified to leave her home because, without her LTC . . . she has no adequate means of self-defense." Third Am. Compl. ¶ 56, ECF No. 34. This allegation of injury is less reasonable because the Plaintiff's LTC permit has been returned.

Considering the three requirements of the Monell test, the Plaintiff has adequately pleaded a municipal liability claim regarding an unconstitutional custom. Therefore, the Court will deny the Defendants' motion to dismiss Count V against Defendant King in her official capacity.

### b. Failure to Train

Regarding Count IV of the third amended complaint, a municipality can also be liable under Monell for failure to train its employees, "if the failure to train 'amount[s] to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Ekwunife, 245 F. Supp.3d at 674 (quoting Connick v. Thompson, 563 U.S. 51 (2011)) (alterations in original) (internal quotation marks omitted). To establish a failure to train claim, a pattern of similar violations is "ordinarily necessary." Connick, 563 U.S. at 62. Although "rare," a single incident may establish deliberate indifference if the "consequences of failing to train could be so patently obvious." Ekwunife, 245 F. Supp.3d at 675 (citing Connick, 562 U.S. at 63).

For a single incident to establish deliberate indifference, a plaintiff must allege that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will

16

frequently cause deprivation of constitutional rights." Id. (quoting Carter v. City of Phila., 181 F.3d 339, 357 (1999)).

The Plaintiff points to the PPD's failure to notify license holders when revocation letters are returned as undeliverable. However, the Plaintiff has not sufficiently alleged a history of similar constitutional violations. Thus, the Court analyzes the Plaintiff's claim under the single incident rubric, and she must show deliberate indifference.

The Plaintiff has not pleaded facts to establish deliberate indifference because the Plaintiff has not satisfied the first and second requirements of the deliberate indifference test. The Plaintiff has pleaded no facts to suggest that the policymakers knew the employees would confront this situation; and the Plaintiff has pleaded no facts suggesting the presence of a difficult choice or a history of mishandling returned revocation notices. Therefore, the Plaintiff has failed to establish a claim for failure to train employees. Given that the Plaintiff has had four opportunities to adequately plead this claim, Count IV will be dismissed with prejudice.

### 3. Claim against King in her personal capacity

The Plaintiff also asserts her unconstitutional custom claim in Count V against Defendant King in her personal

17

capacity.³ There are two avenues to establish that Defendant King is personally liable: (1) the defendant personally directed or had actual knowledge of the constitutional violation; or (2) the defendant, as a policymaker and acting "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).

Here, the Plaintiff asserts that the Supreme Court's decision in Jones v. Flowers put Defendant King on notice that the PPD needed a process to contact license holders when revocation letters were returned as undeliverable. Aside from this assertion, the Plaintiff pleads no facts to support that Defendant King personally directed any employee in the GPU to take no action when the letter was returned as undeliverable. Additionally, the Plaintiff does not allege that Defendant King knew that the letter was returned as undeliverable or was aware of similar prior situations and did nothing to address them. For these reasons, the Plaintiff fails to adequately allege that

---

³ Although the Plaintiff has alleged all of her claims against Defendant King in her official and personal capacity, only the unconstitutional custom due process claim has so far survived dismissal. Thus, the Court only discusses this claim in connection with Defendant King's personal liability.

Defendant King had personal involvement in the incident or was deliberately indifferent to an unreasonable risk. Therefore, the Court will grant the motion to dismiss Count V against Defendant King in her personal capacity. Given that the Plaintiff has also failed to adequately plead this claim after having multiple opportunities to do so, the claim will be dismissed with prejudice.

**V.    CONCLUSION**

For the foregoing reasons, and given that this is the Plaintiff's fourth attempt at stating a claim, the Court will grant the Defendants' motion to dismiss with prejudice Count I ("stigma plus" defamation against King), Count II (state created danger against King), Count III (state created danger against McCoy), and Count IV (failure to train against King). Additionally, the Court will dismiss with prejudice Count V (unconstitutional custom) against Defendant King in her personal capacity. Finally, the Court will deny the Defendants' motion to dismiss Count V (unconstitutional custom) against Defendant King in her official capacity under a Monell liability theory.

An appropriate order follows.