IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIANNA MURPHY, et al.          :     CIVIL ACTION
                                :     NO. 20-2230
            v.                  :
                                :
JOHN DOE POLICE DETECTIVE #1,   :
et al.                          :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    SEPTEMBER 22, 2022


    This is a 42 U.S.C. § 1983 action in which the Plaintiff,
Brianna Murphy, asserts that Defendant Lieutenant Lisa King, in
her official capacity, enforced an unconstitutional policy of
failing to re-notify those whose licenses to carry a concealed
firearm ("LTC") were revoked and whose revocation letters were
returned as undeliverable.[1] Murphy alleges that when King revoked
her LTC and her revocation letter was returned to King, and King
did not attempt to re-contact Murphy, King gave Murphy
insufficient notice of the revocation and deprived her of due
process.

---

[1]    King oversees the Philadelphia Police Department's ("PPD")
Gun Permit Unit ("GPU"). Murphy sued King in her official
capacity, which is "another way of pleading an action against an
entity of which an officer is an agent." Monell v. N.Y.C. Dept.
of Soc. Serv.s, 436 U.S. 658, 690, n. 55 (1978). In other words,
the claim against King in her official capacity is actually a
claim against the City of Philadelphia.

Both parties have filed motions for summary judgment. For the forthcoming reasons, the Court will grant King's motion and deny Murphy's motion.

## I.   BACKGROUND

Murphy, who has an LTC, shot her neighbor in self-defense on October 8, 2018. Murphy was arrested for aggravated assault and her LTC and firearm were confiscated. Ultimately, Murphy was not charged with a crime and her LTC and firearm were returned to her.

However, on October 9, 2018, and unknown to Murphy, the PPD GPU revoked Murphy's LTC. The revocation letter indicated Murphy's LTC was revoked following the arrest for "Careless and Negligent Behavior" and "Character and Reputation." Pl.'s Third Am. Compl. Ex. C, ECF No. 34. On October 10, 2018, The GPU attempted to notify Murphy, via at least certified mail,[2] that her LTC was revoked. However, Murphy did not receive the notice because she had vacated her residence where the notice was sent

---

[2]    The pivotal issue in the case is whether the GPU also sent the revocation letter by regular mail. This Court has previously held that if the GPU sent revocation letters by certified and regular mail, due process would have been satisfied. Murphy v. Doe Police Detective #1, No. CV 20-2230, 2021 WL 4399646, at *4-5 (E.D. Pa. Sept. 27, 2021) (citing Jones v. Flowers, 547 U.S. 220, 232-234 (2006)). Murphy's case is based on the allegation that the GPU only sent the letter by certified mail. As discussed below, the only available evidence shows that, since 2014, the GPU has had a policy of sending revocation letters by certified and regular mail, and there is no evidence this procedure was not followed in Murphy's case.

shortly after the incident with her neighbor. The notice sent by certified mail was returned to the GPU as undeliverable. No other letter was returned. Thereafter, the GPU did not attempt to re-notify Murphy by resending the letter or by any other means.

On January 16, 2020, Murphy was pulled over for a traffic violation in Radnor Township, Pennsylvania. Murphy informed the officer that she had a firearm with her. The officer discovered that Murphy's LTC had been revoked and arrested her for carrying a firearm without an LTC. Murphy was detained for several hours prior to being released on unsecured bond. Ultimately, Murphy's firearm was returned, and the charges were withdrawn. After Murphy filed her case, and at the Court's behest, the GPU granted Murphy a nunc pro tunc appeal of her LTC revocation. Following a hearing on March 9, 2021, the PPD reinstated Murphy's LTC.

Murphy contends that she had a constitutionally protected property interest in her LTC. She argues that, as a direct result of the allegedly unconstitutional policy of sending the revocation letter by certified mail only and not following up on returned letters, she was denied due process when King revoked her LTC.

The parties filed cross-motions for summary judgement. As discussed below, the main contention in this case involves the

type of notice the GPU is required to give in connection with the revocation of an LTC. The Court previously held in connection with a motion to dismiss that (1) Pennsylvania law recognized a protectable property interest in an LTC and (2) under Jones, 547 U.S. 220, if an LTC revocation notice is returned as undeliverable, in order to provide adequate due process, it is likely the GPU is required to attempt to re-contact the individual in some modest way such as resending the letter by regular mail. Murphy, 2021 WL 4399646, at *4-5 (citing Jones, 547 U.S. at 232-234).

Until shortly before the parties' summary judgment motions were filed, the discovery taken[3] indicated that the GPU did not attempt any further actions to provide notice when a certified revocation letter was returned, possibly violating Jones. However, less than two months before the summary judgment deadline, King recalled that, in addition to sending the revocation letters by certified mail, it was the policy of the GPU to send out the letters by regular mail as well. She told

---

[3]   At this point, Murphy's discovery efforts largely consisted of one ten-minute deposition of the revocation officer on her case, Sabrina McCoy, and King's interrogatory responses. Murphy declined to depose King or a Rule 30(b)(6) designated witness, with Murphy's counsel indicating in an email to opposing counsel that he had "no intent to depose Lt King because the City has no policy to comply with [Jones, 547 U.S. 220]: Besides wasting time, there is nothing to depose her about concerning the custom." Feb. 2, 2022 email, ECF No. 54-1 at 2.

her counsel that the policy was implemented in 2014 after Staff
Inspector Francis Healy recommended the tandem letters.[4] In March
of 2020, directly before the summary judgment deadline, King's
counsel contacted Healy to confirm this information and obtained
a declaration from him. King relied on this declaration in her
summary judgment motion. See Healy Dec., ECF No. 62-2. Prior to
King's summary judgment motion, Murphy was unaware of King's
contention that the GPU mailed revocation letters by both
certified and regular mail simultaneously.

In light of the seemingly deus ex machina nature of the
revelation, the Court denied both motions for summary judgment
without prejudice and ordered the parties to take Healy's
deposition and granted leave to take King's deposition.

Pursuant to the Court's directions, the parties took both
depositions and thereafter filed renewed motions for summary
judgement: King contending that the GPU's policies do not
violate Jones because the revocation letters are sent both by
certified and regular mail; and Murphy contending that the GPU's

---

[4]     Healy has a rank within the PPD of Staff Inspector and
serves as a Special Advisor to the Police Commissioner, advising
the Commissioner on policy, planning, and procedures. In 2014,
Healy was involved in LTC appeals and testified at his
deposition that it was at that time that he recommended to King
that the GPU begin sending revocation letters by certified and
regular mail. King testified that she implemented that
recommendation and that, since 2014, the GPU has mailed tandem
revocation letters.

policies denied her due process because the GPU only mails one copy of the revocation letter by certified mail and the testimony of Healy and King to the contrary is false.

## II.  LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is material if proof of its existence "might affect the outcome of the suit," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts "in the light most favorable to the nonmoving party." Am. Eagle Outfitters, 584 F.3d at 581. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010).

While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this

6

obligation shifts the burden to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e) (1963)). A party may not simply stand on a denial of the movant's assertions, but must confront them with evidence which puts the movant's assertions at issue. <u>Id.</u> at 256.

The standard is identical when addressing cross-motions for summary judgment. <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." <u>Schlegel v. Life Ins. Co. of N. Am.</u>, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2720 (3d ed. 1998)).

## III. DISCUSSION

### A.   The Propriety of the Deus Ex Machina

In that it is central to both motions, the Court first addresses the "late in the game" revelatory testimony from King and Healy that, since 2014, the GPU has mailed revocation letters by certified and regular mail.

Without supporting evidence and relying on the seemingly suspicious timing of the revelation, Murphy contends that

7

Healy's affidavit is a "sham" and Healy's and King's deposition testimony that the GPU's policy is to send revocation letters by certified and regular mail is perjurious.

In support of her arguments, Murphy relies on the deposition testimony of McCoy (the GPU revocation officer on Murphy's case) that the GPU has no procedures when a revocation letter is returned as undeliverable. However, this is not a disputed fact and is irrelevant. Other than placing any returned letters in a file, the evidence is unanimous that the GPU has no other procedures in place in the event of a returned revocation letter. Instead, King's testimony is that the GPU has a policy of sending revocation letters both by certified and regular mail at the same time, which ultimately serves the same purpose as resending the letter by regular mail in the event that the certified letter is returned.

Murphy also relies on King's interrogatory answers in which King stated that "[i]f the decision is made to revoke a permit, we send a certified letter to the person's address on file with the GPU." King Interrog. Answers, ECF No. 63-3 at 4. However, King later clarified during her deposition that she "didn't think of it at the time to mention" the second regular mail letter and only "mentioned what we were required to do by law, which was send out the certified letter." King Dep. at 58, ECF No. 62-4. King considered the second letter to be a mere

"courtesy" to the LTC holder. Id. at 69. Had Murphy taken King's deposition during discovery, or that of a Rule 30(b)(6) witness, this information would have likely emerged. In any event, Murphy offers no evidence to support the serious accusation that King fabricated her testimony.

Murphy further contends that Healy's declaration is a "sham" in light of Healy's later deposition testimony. Murphy argues that contrary to his declaration, Healy testified at deposition that he (1) has no personal knowledge of the GPU's current daily operations; (2) has never been inside the current GPU office; (3) did not confirm whether King implemented the alleged policy he recommended (and instead assumed she had); and (4) never saw a revocation letter physically being sent.

The Court concludes that Healy's declaration is not a sham and does not contradict his deposition testimony.[5] While Healy may not have current knowledge of the GPU's daily operations, his testimony is offered to show that he recommended to King in 2014 that the GPU implement a policy of sending both certified

---

[5]   The Court suggests that Murphy is using the legal term "sham" loosely in that she is not contending that the declaration contradicts previous testimony. See Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (defining a sham affidavit as when a party attempts to "create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict"). Instead, Murphy argues that the declaration is contradicted by Healy's later deposition testimony.

and regular mail letters to individuals whose LTCs were revoked.

Moreover, there is no evidence that disputes Healy's contention. In fact, this information is confirmed by King who testified at deposition that she implemented the tandem letter policy after Healy suggested it. Specifically, King testified that "[t]wo letters are printed up. One letter's put in a certified mail and one's put in a regular envelope" and that "[b]oth letters [are] sent at the same time." King Dep. at 38 & 60, ECF No. 62-4.

Finally, Murphy contends that King's counsel's affidavit recounting when King told her about the policy in early 2022 and when counsel reached out to Healy in March 2022 for confirmation is "not credible" and that the affidavit evidences that counsel "is the person who fabricated, at the last-minute, the fake 'and regular mail' policy." Pl. Resp. to Def. MSJ at 23, ECF No. 67; see Def. Counsel Aff., ECF No. 67-5. Murphy contends that counsel's statement "is clearly a lie" since King did not specifically recall speaking to counsel in January or February of 2022. Pl. Resp. to Def. MSJ at 23-24, ECF No. 67. Along the same vein, Murphy contends that counsel's "story further exposes itself as a fraud" because Healy did not specifically recall any initial email from counsel in March 2022. Id. at 24.

In a pejorative and conclusory fashion, Murphy states that:

> Since King never spoke to [counsel] during the time that
> [counsel] claims that she found out about the "and
> regular mail" policy, and because Healy never received
> any emails from [counsel] inquiring about the policy, it
> appears that [counsel] herself "made up" the "and
> regular mail" story, found a dunce in Healy, and
> subsequently instructed King to go along with the lie.

Id. Unfortunately for Murphy's case, this is not what the testimony shows. While the two witnesses could not recall the exact timeline and details of how the conversation with counsel about the GPU policy developed, King recalled alerting counsel to the tandem mail policy and Healy recalled counsel contacting him to obtain the details of his recommendation.

Other than Murphy's speculation, selective use of the deposition testimony and declarations, and inflammatory allegations, Murphy has produced no evidence to contradict King's and Healy's assertion of the tandem letter policy.[6] Thus, in the absence of contrary evidence, the Court concludes that no reasonable jury could find that in 2014 Healy did not recommended to King that she send revocation letters by both certified and regular mail and that King thereafter did not implement that policy.

---

[6]   Murphy's counsel has no one to blame but himself. Had he conducted adequate discovery and yet no information concerning the 2014 tandem letter policy emerged, then the Court may have taken a different view of King's late recollection.

**B.    The Import of <u>Jones v. Flowers</u>, 547 U.S. 220 (2006)**

In <u>Jones</u>, the Supreme Court concluded that after a certified letter was returned to the government apprising the Plaintiff, Jones, of an impending tax sale of his property, due process required the government take "additional reasonable steps to notify Jones, if practicable" such as resending the letter by regular mail. 547 U.S. at 234. The Court noted that even a state statute requiring citizens to update their mailing address does not "relieve[ ] the State of its constitutional obligation to provide adequate notice." <u>Id.</u> at 232. However, the Court also concluded that "[d]ue process does not require that a property owner receive actual notice before the government may take his property." <u>Id.</u> at 226.

When denying the relevant aspect of King's motion to dismiss, this Court concluded that "[c]onsidering the allegations in the light most favorable to the Plaintiff," and "[b]ased on the holding in [<u>Jones</u>]," Murphy "has satisfied the first requirement of the <u>Monell</u> test and has adequately alleged that the GPU's failure to follow-up on the returned LTC revocation letter deprived the Plaintiff of her procedural due process rights." <u>Murphy</u>, 2021 WL 4399646, at * 5. At that time, there were no allegations or evidence that the GPU sent two revocation letters simultaneously by certified and regular mail. In the motion to dismiss decision, this Court also recognized

12

that in order to comply with the due process requirements recognized in Jones, "the GPU could have [ ] simply resent the letter by regular mail." Id. (citing Jones, 547 U.S. at 234).

Thus, the Court now holds that, to the extent the due process protections described in Jones apply to this situation, due process is met since the GPU has a policy of sending revocation letters by both certified and regular mail to former LTC holders. This policy has the same practical effect as resending the letter by regular mail in the event the certified letter is returned, which the Supreme Court held met due process requirements.

### C. The Parties' Motions for Summary Judgment

In order to prevail on her Section 1983 claim against King in her official capacity,[7] Murphy must establish that an official municipal policy or an informal custom deprived her of a right protected by the Constitution. Monell, 436 U.S. at 690-91. To properly state a Section 1983 claim under Monell, "a plaintiff must establish that (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were

---

[7] As stated, the claim against King in her official capacity is a claim against the City of Philadelphia. Monell, 436 U.S. at 690, n. 55.

caused by the identified policy or custom." Ekwunife v. City of Philadelphia, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) (J. Robreno) (citing Monell, 436 U.S. at 692-94), aff'd, 756 F. App'x 165 (3d Cir. 2018).

## 1.   Murphy's Motion for Summary Judgment

Murphy's motion fails at step one of the Monell analysis since she cannot show a policy or custom that violated her rights. While this Court has held that Pennsylvania law recognizes a constitutionally protected property interest in an LTC, it has now also held that the GPU's policy of sending both certified and regular revocation letters meets the due process requirements of Jones (to the extent these requirements are applicable under these facts). See Murphy, 2021 WL 4399646, at *4-5.

Murphy points to no evidence that Healy did not recommend to King in 2014 that the GPU begin sending both certified and regular mail revocation letters, that King did not implement that suggestion, or even that both letters were not delivered to her previous address. Against this dearth of evidence, Murphy volleys unsupported accusations that King, her counsel, and Healy have fabricated the story that it has been the GPU's policy since 2014 to send the tandem letters. While Murphy attempts to show discrepancies between the tandem letter policy as described by King and Healy and the evidence, as discussed

14

above, those discrepancies are illusory and involve mischaracterizations of the evidence.

Viewing the evidence in the light most favorable to King, no reasonable jury could conclude that the GPU did not institute the tandem letter policy in 2014, which complies with any due process requirements in <u>Jones</u>. Thus, the Court will deny Murphy's motion for summary judgment.[8]

### 2.   King's Motion for Summary Judgment

The evidence presented that the GPU has a policy of sending revocation letters by certified and regular mail comes primarily from the testimony of King and Healy. It is true, as King admitted, there is no written documentation showing the implementation of the policy. <u>See</u> King Dep. at 87, ECF No. 62-4 ("There could be e-mails and stuff like that. There could be documentation somewhere. I don't know if I would be able to locate it."). However, there is also absolutely no evidence to contradict the testimony of King and Healy. As discussed above, Murphy has provided no evidence that the GPU did not follow the

---

[8]   Murphy also argues that because King neglected to timely file an answer to her third amended complaint, the Court should deem King to have admitted all material allegations pursuant to Fed. R. Civ. P. 8(b)(6). Given that King filed responses to interrogatories and requests for admission refuting Murphy's allegations, filed an answer to the previous complaint, and otherwise participated in the case, the Court concludes that there was no prejudice to Murphy nor any basis to provide her with the draconian relief she requests for King's procedural oversight.

tandem letter policy for any revocation since 2014 or that the tandem letters did not arrive at her former address.

Thus, even viewing the existing evidence in the light most favorable to Murphy, King is entitled to summary judgment as no reasonable jury could find for Murphy given the complete lack of evidence supporting her claim. Thus, Murphy cannot establish the first prong of the <u>Monell</u> analysis, and the Court will grant summary judgment in favor of King.

## IV.   CONCLUSION

Because the only evidence shows that the PPD GPU utilizes a revocation notice policy that comports with due process, Murphy cannot establish that she is entitled to relief. As result, the Court will deny Murphy's motion for summary judgment and grant King's motion for summary judgment.

An appropriate order follows.